# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE OF CONNECTICUT | : | ss. New Haven, Connecticut |
| | : | |
| COUNTY OF NEW HAVEN | : | June 17, 2013 |

FILED
2017 JUN 8 PM 4 05
U.S. DISTRICT COURT

## AFFIDAVIT

I, Michael Cogan, being duly sworn, depose and state:

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18 of the United States Code. I have been employed as a Special Agent with the United States Drug Enforcement Administration ("DEA") for approximately ten years. I am currently assigned to the DEA New Haven District Office, Organized Crime Drug Enforcement Task Force ("Task Force"), which is composed of personnel from the DEA, the United States Marshals Service, the New Haven Police Department, the West Haven Police Department, the Branford Police Department, the Meriden Police Department, the Ansonia Police Department, and the Hamden Police Department. Prior to my current assignment with the Task Force, I was assigned to the DEA New York Field Division where I had experience investigating high-level money launderers and narcotics traffickers both on a domestic and an international level and, in doing so, have travelled to many states within the United States as well as other countries, including Mexico, Colombia, the Dominican Republic, and Moldova, in furtherance of these investigations. Prior to becoming a Special Agent, I was a police officer in





the State of Connecticut for approximately six years. During my tenure as a police officer and a Special Agent, I have participated in numerous investigations involving individuals suspected of distributing illegal drugs; coordinated controlled purchases of illegal drugs utilizing confidential sources, cooperating witnesses, and undercover police officers; written, obtained, and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs; conducted electronic as well as physical surveillance of individuals involved in illegal drug distribution; analyzed records documenting the purchase and sale of illegal drugs; provided testimony both in Grand Jury proceedings and District Court proceedings; and spoken with informants and subjects, as well as other local, state, and Federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs.

2. This affidavit is submitted in support of a search warrant to activate and retrieve all stored electronic information, including telephone numbers, digits, names, text messages, photographs, identifying information such as telephone numbers and serial numbers, the originating telephone numbers, and other electronic information stored in (1) a black and silver Apple iPhone 4 mobile telephone ("Subject Telephone 1"); (2) a blue AT&T Samsung mobile telephone ("Subject Telephone 2"); (3) a black Sprint HTC mobile telephone ("Subject Telephone 3"); and (4) a black Sprint HTC mobile telephone with red coloring on the back ("Subject Telephone 4") (collectively, the "Subject Telephones"). Subject Telephones 1 and 2 were seized by law enforcement officers on May 22, 2012 from near the person of TYLON VAUGHN, in the residence where he was arrested. Subject Telephone 3 was seized by law enforcement officers on May 22, 2012 from near the person of MICHAEL THOMPSON, on the





nightstand in his bedroom. Subject Telephone 4 was seized by law enforcement officers on May 22, 2012 from the residence of BRITT MARTIN after MARTIN provided the location of Subject Telephone 4 and the security code. The Subject Telephones have been retained as evidence since May 22, 2012 by law enforcement officers at the DEA New Haven District Office located at 55 Church Street, New Haven, Connecticut. Based on the following, there is probable cause to believe that the Subject Telephones contain stored telephone numbers of individuals involved in the acquisition and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), and 846, and that the stored information as to the identifying information for the Subject Telephones is evidence of the participation of TYLON VAUGHN, MICHAEL THOMPSON, BRITT MARTIN, and others in these offenses.

3. This affidavit sets forth facts and evidence that are relevant to the requested search warrants, but does not set forth all of the facts and evidence that have been gathered during the course of the investigation of this matter. More specifically, I have set forth only facts that I believe are necessary to establish probable cause for the issuance of the search warrants for the Subject Telephones. I have personally participated in this investigation and the statements contained in this affidavit are based, in part, on information provided by other Special Agents and Task Force Officers of the DEA as well as information provided by a cooperating witness and other cooperating sources; physical surveillance; controlled purchases of narcotics; pen register data and toll records; court-authorized wire interceptions over cellular telephones utilized by TYLON VAUGHN, BRITT MARTIN, and CHRISTOPHER MORLEY; and the training and experience of this affiant.



4. On July 29, 2011, the Government presented to the Honorable Alvin W. Thompson, Chief United States District Judge, District of Connecticut, an application for authorization to intercept wire communications occurring over a cellular telephone utilized by TYLON VAUGHN ("Target Telephone 3"), among other cellular telephones. The Court reviewed the application and signed an order authorizing the interception on the same day. The interceptions over Target Telephone 3 commenced on or about July 29, 2011 and terminated on or about August 27, 2011.

5. On September 2, 2011, the Government presented to the Honorable Alvin W. Thompson, Chief United States District Judge, District of Connecticut, an application for authorization to intercept wire communications occurring over a cellular telephone utilized by BRITT MARTIN ("Target Telephone 6"), along with one other cellular telephone. The Court reviewed the application and signed an order authorizing the interception on the same day. The interceptions over Target Telephone 6 commenced on or about September 2, 2011 and terminated on or about October 1, 2011. On October 20, 2011, the Government presented to the Honorable Alvin W. Thompson, Chief United States District Judge, District of Connecticut, an application for authorization for renewed interception of wire communications occurring over Target Telephone 6. The Court reviewed the application and signed an order authorizing the renewed interception on the same day. The interceptions over Target Telephone 6 re-commenced on or about October 20, 2011 and terminated on or about November 18, 2011.

6. On October 12, 2011, the Government presented to the Honorable Alvin W. Thompson, Chief United States District Judge, District of Connecticut, an application for authorization to intercept wire communications occurring over a cellular telephone utilized by



CHRISTOPHER MORLEY ("Target Telephone 8"), along with other cellular telephones. The Court reviewed the application and signed an order authorizing the interception on the same day. The interceptions over Target Telephone 8 commenced on or about October 13, 2011 and terminated on or about November 11, 2011.

7. On November 22, 2011, the Government presented to the Honorable Alvin W. Thompson, Chief United States District Judge, District of Connecticut, an application for authorization to intercept wire communications occurring over a cellular telephone utilized by BRITT MARTIN ("Target Telephone 10"), along with other cellular telephones. The Court reviewed the application and signed an order authorizing the interception on the same day. The interceptions over Target Telephone 10 commenced on or about November 22, 2011 and terminated on or about December 21, 2011.

8. On November 22, 2011, the Government presented to the Honorable Alvin W. Thompson, Chief United States District Judge, District of Connecticut, an application for authorization to intercept wire communications occurring over a cellular telephone utilized by CHRISTOPHER MORLEY ("Target Telephone 11"), along with other cellular telephones. The Court reviewed the application and signed an order authorizing the interception on the same day. The interceptions over Target Telephone 8 commenced on or about November 22, 2011 and terminated on or about December 21, 2011. On December 22, 2011, the Government presented to the Honorable Alvin W. Thompson, Chief United States District Judge, District of Connecticut, an application for authorization for renewed interception of wire communications occurring over Target Telephone 11. The Court reviewed the application and signed an order authorizing the renewed interception on the same day. The interceptions over Target Telephone



11 continued on or about December 22, 2011 and terminated on or about January 20, 2012. On January 30, 2012, the Government presented to the Honorable Alvin W. Thompson, Chief United States District Judge, District of Connecticut, an application for authorization for renewed interception of wire communications occurring over Target Telephone 11. The Court reviewed the application and signed an order authorizing the renewed interception on the same day. The interceptions over Target Telephone 11 continued on or about January 31, 2012 and terminated on or about February 28, 2012.

9. On May 10, 2012, a federal grand jury sitting in New Haven returned a six-count Indictment charging VAUGHN, THOMPSON, MARTIN, and numerous co-defendants with violations of the drug and firearm laws. Specifically, the Indictment charged VAUGHN in Count One with conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), and 846; and in Counts Two and Three with possession with intent to distribute and distribution of cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). The Indictment charged THOMPSON in Count One with conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), and 846. The Indictment charged MARTIN in Count One with conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), and 846; in Count Four with possession with intent to distribute marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D); in Count Five with unlawful possession of a firearm by a convicted felon, in violation of Title 18, United States





Code, Sections 922(g)(1) and 924(a)(2); and in Count Six with possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 924(c)(2). Arrest warrants were issued and law enforcement officers executed those warrants on May 22, 2012. On May 22, 2012, VAUGHN, THOMPSON, and MARTIN were arrested, presented before the Honorable Holly B. Fitzsimmons, United States Magistrate Judge, and ordered detained. On January 31, 2013, the grand jury returned a Superseding Indictment, charging VAUGHN, THOMPSON, and MARTIN with the same offenses set forth above. VAUGHN, THOMPSON, and MARTIN remain in federal custody at this time.

10. Because the information and evidence gathered during this investigation is voluminous, this affidavit includes only those facts which relate to the need for, and propriety of, the requested authorization; this affidavit does not purport to set forth all of the facts gathered during the course of the investigation of this matter.

11. Intercepted calls, surveillance, controlled purchases, and seized narcotics confirmed that VAUGHN, THOMPSON, MARTIN, and others, including CHRISTOPHER MORLEY, were involved in the large-scale distribution of controlled substances—including cocaine, cocaine base, oxycodone, and marijuana—in and around New Haven, Connecticut. During the course of the underlying investigation, it became apparent that VAUGHN regularly obtained cocaine base from MORLEY, MARTIN, and others. On May 5, 2011, law enforcement officers conducted a controlled purchase of 10.3 grams (approximately three eight-balls) of cocaine base from VAUGHN. Similarly, on June 13, 2011, law enforcement officers conducted a controlled purchase of 4.0 grams of cocaine base from VAUGHN. Both of these controlled purchases were coordinated by a cooperating source who contacted a cellular telephone used by VAUGHN.



[redacted] has confirmed VAUGHN's purchase of cocaine base for the purpose of redistribution from MORLEY and MARTIN as well as VAUGHN's use of a cellular telephone in coordinating the redistribution of that cocaine base.

12. Intercepted calls, surveillance, controlled purchases, and seized narcotics confirmed that THOMPSON regularly obtained cocaine and oxycodone from MORLEY and that MORLEY sometimes obtained controlled substances from THOMPSON. As part of an independent investigation, on December 12, 2010 and August 7, 2011, a member of the New Haven Police Tactical Narcotics Unit conducted controlled purchases of cocaine base from THOMPSON utilizing confidential witnesses. On January 7, 2012, as part of that independent investigation, the New Haven Police Officer directed a concerned citizen to contact THOMPSON on his cellular telephone and arrange to purchase $200 worth of cocaine base. THOMPSON directed the confidential witness to meet him at a specific gas station. When THOMPSON arrived at that location, law enforcement officers conducted a motor vehicle stop and eventually recovered 18 small, yellow-tinted, zip-lock baggies and one clear cellophane wrapper, each containing cocaine base, from THOMSPON's buttocks. During the course of the wiretap interceptions in this underlying investigation, it became apparent that THOMPSON and MORLEY regularly purchased controlled substances from one another. The fact of THOMPSON's purchases from MORLEY, and THOMPSON's use of a cellular telephone in coordinating those purchases and the redistribution of the controlled substances, has been confirmed by [redacted]





13. Intercepted calls, surveillance, controlled purchases, and seized narcotics and a firearm confirmed that MARTIN regularly obtained cocaine and marijuana in conjunction with MORLEY. Moreover, MARTIN converted some portion of the cocaine into cocaine base. On December 21, 2011, based in part on intercepted communications related to a firearm and controlled substances, law enforcement officers conducted a motor vehicle stop of the vehicle in which MARTIN was a passenger. In the vehicle, they recovered approximately a half-pound of marijuana near the person of MARTIN. MARTIN's significant other later provided consent to search her residence and a vehicle parked in the residence's driveway. In the closet of the master bedroom, law enforcement officers located a safe containing approximately $18,500 in U.S. currency, a loaded Smith & Wesson revolver, and approximately 2.9 pounds of marijuana. In the kitchen, law enforcement officers located a digital scale and drug packaging material. In the vehicle, law enforcement officers located another digital scale. Moreover, on May 22, 2012, MARTIN provided a post-arrest statement in which he admitted his long-standing involvement in the distribution of marijuana and provided the location of and security code to his cellular telephone. During the course of the underlying investigation, it became apparent that MORLEY and MARTIN jointly purchased kilogram quantities of cocaine from suppliers in New York City for the purpose of redistribution and that MARTIN subsequently converted some portion of the cocaine into cocaine base for redistribution. Moreover, MORLEY and MARTIN jointly obtained quantities of marijuana for redistribution. The fact of MARTIN's drug relationship with MORLEY, and MARTIN's use of a cellular telephone in coordinating the purchase and the redistribution of controlled substances, has been confirmed by [redacted]

14. Based on my training and experience, I know that narcotics traffickers often use cellular telephones, and often speak to one another using coded, cryptic, or slang words and phrases, in the belief that, by doing so, they can thwart the efforts of law enforcement to identify them and their activities and to seize their drugs and/or assets. I know that drug traffickers frequently have access to several cellular telephones, and that they periodically use newly acquired cellular telephones. I also know that narcotics traffickers and distributors frequently use cellular telephones subscribed to by other persons and pre-paid cellular telephones that require the purchaser to provide little or no identifying information to purchase, activate, and utilize, all of which is done in an effort to avoid detection and thwart the efforts of law enforcement. I know, based on my training and experience, that narcotics traffickers and distributors often segregate various aspects of their illicit business, and use different telephones when tending to each of the various aspects, in an effort to thwart law enforcement and insulate themselves and their confederates. For example, drug dealers often use one telephone to contact customers and another telephone to contact their narcotics sources of supply.

15. Moreover, based on my training and experience, I know that drug traffickers often store the phone numbers of their customers, associates or their sources of illegal narcotics within the electronic memory of their cellular telephones. I also know that, as cellular telephones, each of the Subject Telephones bears a serial number or other identifying number, and has a SIM card or other memory device which contains identification data, as well as data placed in the telephone by its user, such as addresses and phone numbers of associates and numbers recently called by or called into the cellular telephone. Examination of the identifying number, SIM card and memory of these cellular telephones will enable me to acquire this type of information and to





determine whether the Subject Telephones were intercepted during the wire surveillance portion of this investigation, which information constitutes evidence of the commission of the federal offenses charged against VAUGHN, THOMPSON, and MARTIN.

16. There is probable cause to believe that VAUGHN, THOMPSON, and MARTIN used cellular telephones to facilitate and conduct narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. As a result, there is probable cause to believe that the Subject Telephones contain stored electronic information, including telephone numbers, digits, names, text messages, photographs, identifying information such as telephone numbers and serial numbers, the originating telephone numbers, and other electronic information, that will assist law enforcement in this investigation and which is evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

17. I respectfully request that the Court issue search warrants authorizing the DEA to activate and retrieve the stored electronic information, including telephone numbers, digits, names, text messages, photographs, identifying information such as telephone numbers and serial numbers, the originating telephone numbers, and other electronic information, from the Subject Telephones.

Michael Cogan, Special Agent
U.S. Drug Enforcement Administration

Subscribed and sworn to before me this 17th day of June, 2013.

The Honorable Joan G. Margolis
United States Magistrate Judge